**ORAL ARGUMENT REQUESTED**

**CASE NO. 22-13025**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

LARRY KLAYMAN

Plaintiff-Appellant,
v.

JULIA PORTER, et al

Defendants-Appellees.

---

APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

**APPELLANT'S INITIAL BRIEF**

---

/s/ Melissa Isaak
Melissa Isaak, Esq.
2815-B Zelda Road
Montgomery, AL 36106
Tel: 334-262-8200
Melissa@protectingmen.com

*Counsel for Appellant*

**Dated**: October 17, 2022

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following persons may have an interest in this case:

1.    Hamilton Fox, III – Defendant/Appellee

2.    Melissa Isaak – Counsel for Appellant

3.    Matthew Kaiser – Defendant/Appellee

4.    Larry Klayman – Plaintiff/Appellant

5.    Mark J. MacDougall – Counsel for Defendants/Appellees

6.    Lide E. Paterno – Counsel for Defendants/Appellees

7.    Brian E. Rafkin – Counsel for Defendants/Appellees

8.    Hon. Raag Singhal – Judge in District Court Proceedings

## ORAL ARGUMENT STATEMENT

Appellant Larry Klayman respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules.

## **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT .....................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..........................1

STATEMENT OF THE CASE .........................................................................1

    DEFENDANTS/APPELLEES HAVE WEAPONIZED THE D.C. OFFICE
    OF BAR DISCIPLINARY COUNSEL TO HARM CONSERVATIVE
    LAWYERS.................................................................................................2

    DEFENDANTS/APPELLEES CONTINUED PATTERN AND PRACTICE
    OF ILLEGAL, IMPROPER, AND UNETHICAL MISCONDUCT .............7

SUMMARY OF THE ARGUMENT ...................................................................14

STANDARD OF REVIEW ..............................................................................15

ARGUMENT ...............................................................................................15

    THE DISTRICT COURT HAD NO SUBJECT MATTER JURISDICTION
    OVER THIS CASE, AND EGREGIOUSLY ERRED BY REFUSING TO
    REMAND.................................................................................................15

    THE DISTRICT COURT ERRED BY GRANTING THE
    DEFENDANTS/APPELLEES' MOTION TO DISMISS ...........................18

        The District Court Erred By Applying the Rule Against Claim
        Splitting ...............................................................................................18

        Defendants/Appellees Have No Absolute Immunity .........................19

        *Younger* Abstention Does Not Apply .................................................23

        Mr. Klayman Has Pled Valid Causes of Action .................................25

CONCLUSION ............................................................................................27

## Table of Authorities

### Cases

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) ......................................................24

*Douglas v. United States*, 814 F.3d 1268 (11th Cir. 2016) ....................................15

*Ericsson GE Mobile Communs. v. Motorola Communs. & Elecs.*, 120 F.3d 216 (11th Cir. 1997) ......................................................................................................16

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ........................20

*Hensler v. District Four Grievance Committee*, 790 F.2d 3901 (5th Cir.1986) .....24

*JMM Corp. v. District of Columbia*, 363 U.S. App. D.C. 160 (2004) ...................24

*Joseph v. Pacesetter Personnell Serv.*, 2022 U.S. Dist. LEXIS 108102 (S.D. Fla. June 16, 2022)........................................................................................................18

*Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988) ...................................................24

*Livingston v. Guice*, 1995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995) ........21

*Mitchell v. GEICO*, 115 F. Supp. 2d 1322 (M.D. Ala. 2000)..................................16

*Moten v. Hatch*, 2011 U.S. Dist. LEXIS 97661 (D.D.C. Aug. 25, 2011) ...............21

*Pulliam v. Allen*, 466 U.S. 522 (1984)..........................................................14, 22, 23

*Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010) .............21

*Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013)...........................................23

*Wagshal v. Foster*, 307 U.S. App. D.C. 382 (1994)...............................................14

*Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325  (11th Cir. 1998).............................17

*Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166 (June 27, 199)3 ...... 20

*Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979)..............................................24

### Statutes/Rules/Constitutional Provisions

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1332 ......................................................................................................1

Fla. Constitution Section IV ...............................................................................7, 8

Fla. Constitution Section IX ..................................................................................26

42 U.S.C. § 1983 .......................................................................................19, 22, 23

District of Columbia Bar Rule XI § 19(a) .............................................................20

## <u>Secondary Sources</u>

*Absolute Judicial Immunity Makes Absolute No Sense: An Argument for an Exception to Judicial Immunity*, 84 Temp. L. Rev. 1071 .......................................23

*Note: Pulliam v. Allen: Harmonizing Judicial Accountability for Civil Rights Abuses with Judicial Immunity* 34 Am. U. L. Rev. 523 ..........................................23

## JURISDICTIONAL STATEMENT

The basis for which U.S. District Court for the Southern District of Florida's ("District Court") subject-matter jurisdiction is pursuant to 28 U.S.C. § 1332 under Diversity Jurisdiction, which was a clear and egregious error, since the amount in controversy did not meet the jurisdictional threshold, as set forth below. The basis for the U.S. Court of Appeals for the Eleventh Circuit's jurisdiction is pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment that disposes of all of the Appellant's claims as to the Appellees.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err by granting Defendants/Appellees' Motion to Dismiss? ECF No. 20.

2.      Did the District Court err by denying Plaintiff/Appellant's Motion to Remand? ECF No. 18.

## STATEMENT OF THE CASE

Defendants/Appellees Julia Porter ("Porter") and Hamilton Fox III ("Fox") are employed by the District of Columbia Office of Disciplinary Counsel ("ODC"0 and Matthew Kaiser ("Kaiser") is the chairperson of the District of Columbia Board on Professional Responsibility ("Board"). Thus, they are all members of the District of Columbia attorney discipline apparatus. Mr. Klayman is a prominent

conservative private and public interest attorney and advocate and an author, columnist, and syndicated radio talk show host. Comp. ¶ 3.

The Defendants/Appellees have engaged in a continuing illegal, unlawful, and unconstitutional conduct meant to damage and destroy his reputation, financially ruin him, and to have him expend considerable amounts of time defending himself from frivolous bar complaint after frivolous bar complaint and therefore silence his conservative/libertarian private and public interest advocacy, the right to which is guaranteed to Mr. Klayman and his clients under Section IV of the Florida Constitution ( "Section IV"). This incredibly harmful and damaging conduct has forced Mr. Klayman to bring suit against them **for injunctive relief only** in order to prevent further damage to his reputation, his livelihood, and his ability to make a living as a conservative private and public interest attorney and advocate.

## I.    Defendants/Appellees Have Weaponized the D.C. Office of Bar Disciplinary Counsel to Harm Conservative Lawyers

It is important for the Court to grasp why Mr. Klayman has been targeted in such a manner by the Defendants/Appellees. Mr. Klayman is a prominent conservative/libertarian public interest and private practice litigator and advocate, who has brought suit against Obama, the Clintons, and others. On the other hand, the Defendants/Appellees are ideologically and politically diametrically opposed and adverse, which in and of itself is fine since everyone should be able to have

their own political and other beliefs, but the Defendants/Appellees have taken it many steps further and become a weapon for the left to seek out and destroy those who they do not agree with, which has become the norm in the nation's capital which is often referred to as "the swamp," for good reason, where destroying ideological and political adversaries is seen as a normal way of life. Defendants/Appellees have been particularly active during the Trump years and thereafter, and have accepted and initiated ethics complaints against White House Counsellor Kellyanne Conway[1] over remarks she made on cable news, against former Trump Attorney General William Barr[2] (this partisan complaint was outrageously and incredibly filed by all four (4) prior presidents of the District of Columbia bar as well as a former Senior Bar Counsel) for withdrawing the indictment of General Mike Flynn and for remarks he made on Fox News, Senators Ted Cruz[3] and Josh Hawley[4] over their role in advocating for President Trump in the last election, and former U.S. Attorney Rudy Giuliani, who was

---

[1] https://www.washingtonpost.com/politics/law-professors-file-misconduct-complaint-against-kellyanne-conway/2017/02/23/442b02c8-f9e3-11e6-bf01-d47f8cf9b643_story.html

[2] https://thehill.com/regulation/court-battles/508489-more-than-two-dozen-dc-bar-members-urge-disciplinary-probe-of-ag

[3] https://www.texasstandard.org/stories/lawyers-law-students-officially-file-grievances-seeking-to-disbar-senator-ted-cruz/

[4] https://thehill.com/homenews/state-watch/534783-attorneys-urge-missouri-supreme-court-to-probe-hawleys-actions

temporarily suspended without even a hearing,[5] over his representation of President Trump, to name just a few. To the contrary, when an ethics complaint was filed against Defendants/Appellees' counsel, Mark MacDougall, for making false statements in court pleadings, and fellow leftist Democrat lawyer David Kendall of Williams & Connolly over his admitted involvement in the destruction of Hillary Clinton's 33,000 emails, which complicity is not even in dispute, the complaint was not acted upon, and ODC summarily and quickly rejected the complaint filed by conservative lawyer and public interest advocate Ty Clevenger against Hillary Clinton, who ODC has also attempted to disbar, until they drove him into submission due to the cost of defending himself, and he simply resigned.[6] Comp. ¶ 14.  Furthermore, in a recent disciplinary proceeding, on the Hearing Committee was Michael Tigar, a proud and avowed communist, a clear ideological foe to Mr. Klayman. ECF No. 19-2. This evidenced the "stacked deck" that conservative attorneys like Mr. Klayman are faced with.

　　Not coincidentally, Defendant/Appellee Porter and ODC have engaged in similar unethical, if not illegal and unconstitutional tactics with regard to other

---

[5] https://www.law.com/newyorklawjournal/2021/03/03/nyc-bar-details-complaints-calling-for-full-attorney-discipline-investigation-of-giuliani/#:~:text=Under%20the%20New%20York%20state,censured%20or%20receive%20no%20punishment.

[6] Ty Clevenger, State bar prosecutors are flouting the law, protecting Hillary Clinton and her lawyers, LawFlog, available at: https://lawflog.com/?p=1389

conservative and Republican members of the District of Columbia Bar who they arrogantly decide for themselves, for whatever improper reason, should no longer have the privilege of practicing law in the District. Another District of Columbia lawyer, J.P. Szymkowicz, and Republican member of District of Columbia governing bodies filed a complaint for similar unethical and illegal conduct, which was supposed to give rise to an unprecedented internal Board of Professional Responsibility ("Board") review of the unethical and illegal conduct of Defendant/Appellee Porter and ODC. Comp. ¶. 15, Comp. Ex. 2. However, despite repeated requests by Mr. Szymkowicz, which requests went substantively unanswered by Defendant/Appellee Kaiser, the new Board chairman, for years, this internal review was predictably never actually undertaken, evidencing that Defendant/Appellee Kaiser and his Board will go to great lengths to protect his politically partisan, ethically and legally compromised if not corrupted disciplinary apparatus, as well as himself. Comp. ¶. 15, Comp. Ex. 2.

And now, the facts surrounding ODC's refusal to enforce its own rules on Kevin Clinesmith—the former senior Trump hating FBI lawyer who falsified a surveillance document in the Trump-Russia investigation and who pled guilty to felony charges—have been revealed.[7] ECF No. 19-3 The Court can take judicial notice of this, as matters of public record. Even though it is customary to seek

---

[7] *In Matter of Kevin E. Clinesmith*, 21-BG-018 (D.C. App.)

disbarment for lawyers who are convicted of serious crimes, ODC did not even initiate disciplinary proceedings and temporarily suspend him until <u>five months</u> after Clinesmith pled guilty, and only after their inaction was uncovered and subjected to negative publicity. It is clear that ODC and the Board intended to simply sweep this under the rug until their duplicitous practice of selective prosecution was uncovered and revealed further. Then, even more incredibly, Clinesmith was reinstated as a member of the bar in good standing after the Court agreed with ODC's recommendation to let Clinesmith off with time served after just seven (7) months. Records show that ODC did not even check with Clinesmith's probation officer to see if he had violated terms or completed his community service requirement. ODC and the Board also did not seem to care that Clinesmith did not report his felony guilty plea to the bar within 10 days, as required by the rules, and instead failed to do so for five (5) months. Despite all of this, Clinesmith was allowed to negotiate his practically non-existent sanction with his ODC compatriots and sycophants led by Chairman Kaiser at the Board. The reason for this preferential treatment? Clinesmith's fraud was committed in order to destroy President Trump, and Clinesmith has himself publicly made virulent anti-Trump political messages. Defendants/Appellees Fox and Kaiser orchestrated this "dive" in order to clearly favor Clinesmith, who they are ideologically akin to. In stark contrast, an apparently ethical bar association which apparently dealt with

facts and not political favors—the Michigan Bar—promptly automatically suspended Clinesmith on the day he pled guilty of a felony and suspended him for two years.

## II.    Defendants/Appellees Continued Pattern and Practice of Illegal, Improper, and Unethical Misconduct

As set forth in the Complaint, the Defendants/Appellees have engaged in a continuing course of conduct and goal is to continue to pile on meritless investigation and complaint after meritless investigation and complaint in order to financially ruin Mr. Klayman, and to have him expend considerable amounts of time defending himself and therefore silence his conservative/libertarian private and public interest advocacy, the right to which is guaranteed to Mr. Klayman and his clients under Section IV. Comp. ¶ 9. As part of their pattern and practice of and continuing course of conduct and scheme to severely and irreparably harm and damage Mr. Klayman by attempting to remove him from the practice of law, Defendants/Appellees have chosen to use the tactic engaging in acts which harassing, unethically and illegally,  financially harm Mr. Klayman, if not bankrupting him, by a never ending series of bar proceedings that lack merit, but which incur huge attorney time, resources and monies to defend. Thus, even when they fail in their attempts to have Mr. Klayman disbarred, they are attempting to accomplish the same purpose by destroying his legal practice and other professional endeavors and he and his family's well-being financially by having to

defend, at huge cost in terms of legal fees, costs and time, their frivolous attempts, at  taxpayer and/or bar member expense but not their own, to have him removed from the practice of law in the District of Columbia, and then publicizing this to the media in Florida and elsewhere throughout the United States to ruin his reputation and harm him, his colleagues and family further. Comp. ¶ 12. Defendants/Appellees know that by bankrupting and silencing his Section IV private and public interest advocacy in the District of Columbia, they are also seeking to accomplish the same objective in the other jurisdiction where Mr. Klayman primarily practices—Florida – his home state. Comp. ¶ 10. To that end, the Defendants/Appellees have piled on meritless bar complaint after meritless bar complaint, as set forth in the Complaint.

*First*, is *In re Klayman*, 20-BG-583 (the "Sataki Complaint"). The Sataki Complaint is based on Mr. Klayman's representation of Elham Sataki in and around the year 2010 **Evidencing the entirely meritless nature of the Sataki Complaint is the fact that Ms. Sataki filed identical complaints with The Florida Bar as well as the Pennsylvania Bar, and they were summarily dismissed many years ago as being meritless**. Comp. ¶ 30. Furthermore, Ms. Sataki even abandoned her complaint with ODC, yet ODC literally used a private investigator to track her down in order to get her to continue her complaint against Mr. Klayman. Comp. ¶ 30. Then, at the hearing in this matter, Ms. Sataki was

totally impeached after having given conflicting and false testimony, and she was ODC's only material witness. On the other hand, Mr. Klayman presented seven compelling material witnesses in his favor, including a federal judge and woman's rights advocate Gloria Allred, who all testified in Mr. Klayman's favor. So too did renowned legal ethics expert Ronald Rotunda, who issuing an opinion in a pro bono capacity, found that Mr. Klayman had done no wrong. Yet despite all of this, and as evidence of a corrupted and partisan D.C. bar disciplinary apparatus, the Board, led by Defendant/Appellee Kaiser, still, without factual or legal basis, recommended discipline and an 18 month suspension against Mr. Klayman, as well as a draconian reinstatement provision without factual or legal bases to do so. Comp. ¶ 30. Nonetheless, as a result of this politically based, highly flawed and prejudicial Report by Defendant/Appellee Kaiser and the Board, Mr. Klayman was essentially been automatically given a temporary suspension by the DCCA while the matter is being decided. This complete due process violation is the underlying basis for the case styled and *Klayman v. Blackburne-Rigsby, et al*, (21-cv-409) (D.D.C.) (*"Blackburne* Case"), as set forth in detail in the following section. Comp. ¶ 33.

*Second*, there is the case styled *In re Klayman*, 18-BD-070 (the "Bundy Complaint") that is currently pending at the Board. The Bundy Complaint centered around Mr. Klayman's zealous efforts to obtain *pro hac vice* entry into the criminal

prosecution of his client, Cliven Bundy, in the U.S. District Court for the District of Nevada. Mr. Bundy was facing the possibility of life imprisonment for his role in a peaceful standoff with federal Bureau of Land Management and Federal Bureau of Investigation agents in 2014. During the trial, it was clear that the federal prosecutors in charge were willfully and wantonly disregarding and violating the law, not turning over exculpatory  Brady material, and repeatedly lying to the Court[8], which to both Mr. Bundy and Mr. Klayman meant that Mr. Klayman needed to do everything he possibly could to gain *pro hac vice* entry to defend him in literally a life-or-death scenario. Comp. ¶ 35. At the disciplinary hearing on this matter, Erwin Chemerinsky, Dean of U.C. Berkeley School of Law and perhaps the most respected constitutional and legal ethics scholar alive today as Professor Rotunda is deceased, and someone who is not of Mr. Klayman's ideological persuasion, testified as an pro bono expert witness on behalf of Mr. Klayman that he did nothing wrong. At the conclusion of the hearing, the chairperson of the Hearing Committee, Buffy Mims, Esq., stated, ""the Hearing Committee went into executive session and determined that it could not make a preliminary finding that Disciplinary Counsel had proven any disciplinary rule violation." Comp. ¶ 36.

---

[8] This was so bad that the supersedeas indictment  against Mr. Bundy and the other defendants was ultimately dismissed  due to gross prosecutorial misconduct

*Third*, there is a completely frivolous complaint brought by known con-man and recognized fraudster Dennis Montgomery, which is still pending at ODC over two years later. *In re Klayman*, 2019-D197 (the "Montgomery Complaint"). Mr. Montgomery has a national and international reputation of being a con man, a fraud, an extortionist and as a sick pathological liar, attesting to by even one of his prior legal counsel, Michael Flynn. In the record at ECF No. 19-3 is, as just one of a myriad of examples, a report concerning  Mr. Montgomery infamous reputation as a con-man, his latest con and fraud concerning his association with CEO Mike Lindell of MyPillow over the 2020 presidential election – where he conned Lindell to buy him a multi-million dollar house.  Currently pending as well is a criminal indictment in Las Vegas Nevada against Mr. Montgomery over charges of gambling fraud (i.e., passing bad checks, etc.) and other illegal acts. Comp. ¶ 37, Comp. Ex. 3. Mr. Klayman even submitted to Defendants a detailed response completely refuting every single false allegation brought by Mr. Montgomery, who had for years actually been cyber-harassing Mr. Klayman, his family, and his associates, Comp. ¶ 39, yet completely undeterred by the facts and the truth, and seizing upon this false and fraudulent complaint by Mr. Montgomery, Defendant/Appellee  Porter prematurely and vindictively and without cause had issued a vexatious and retaliatory subpoena and purportedly served it on Mr. Klayman to clean out all of his files with regard to his prior representation of

11

Montgomery, without cause, as Defendant/Appellee Porter failed and refused to do even a cursory due diligence with regard to the veracity of Montgomery's fraudulent complaint. Comp. ¶ 40.

*Fourth*, there is a complaint brought by Peter Santilli, a convicted felon, and a surrogate of seven count convicted felon Roger Stone – someone who MR. Klayman believes may have, with his ties to President Trump, played a role in having this Court appointed to the federal bench having played the same role with other federal judges in this courthouse -- the latter of whom Mr. Klayman has had to sue for his client Dr. Jerome Corsi and himself over defamation, which Santilli complaint is also pending at ODC. Mr. Santilli was paid by Stone to file the bar complaint to harm Dr. Corsi who is represented by Mr. Klayman. This complaint, like the others, is ludicrous as Mr. Klayman never even represented Mr. Santilli as a client. Incredibly, even this complaint is still pending at ODC, as Defendants/Appellees are also keeping it in their "back pocket" in case they don't achieve the results they want in Sataki and Bundy. Comp. ¶ 41, Comp. Ex. 4.

*Fifth*, On October 28, 2021, Defendant/Appellee Porter, arrogantly gloating in Plaintiff's face, sent Mr. Klayman a new letter informing him of "**another investigation**" and asking him to explain how two lawsuits, *Klayman v. Rao et al*, 21-cv-2473 (D.D.C.) ("*Rao* Case") and *Klayman v. Blackburne-Rigsby, et al*, (21-cv-409) (D.D.C.) ("*Blackburne* Case") did not violate Rule 3.1, which requires

that "a lawyer not bring a proceeding or assert an issue without a factual and legal basis." Comp. ¶ 43, Comp. Ex. 6. Mr. Klayman was forced to file these two lawsuits in order to protect his due process and other sacrosanct rights. In the *Rao* case, Mr. Klayman brought suit for due process and other violations stemming from a civil case styled *Klayman v. Judicial Watch, Inc. at al*, 1:06-cv-670 (D.D.C.). and its appeal at the D.C. Circuit (the "Judicial Watch Case"). As a result of the Judicial Watch Case, Mr. Klayman is facing a highly flawed and large jury verdict that will surely bankrupt him. This jury verdict was reached as a result of highly prejudicial and manifest errors by both the trial court as well as the appellate court that they refused to even consider, much less correct. Mr. Klayman therefore had no choice but to file this suit to preserve his due process and other rights, where he only sought injunctive and declaratory relief. Comp. ¶ 44, Comp. Ex. 6. In the *Blackburne* case, Mr. Klayman is currently serving a completely unwarranted and unconstitutional "temporary suspension" from the District of Columbia Bar, now going on 17 months, pending the final disposition of the flawed and frivolous Sataki Case. Mr. Klayman has essentially been presumed guilty until proven innocent, a complete violation of his due process, equal protection and other rights, as set forth above. Comp. ¶ 45. Even just a cursory review of both of these Complaints would have revealed that neither case sought any monetary damages against the Defendants, and instead, only sought injunctive

and/or declaratory relief. This type of Complaint is clearly proper as a matter of established and black letter case law and other legal precedent. *See Pulliam v. Allen*, 466 U.S. 522 (1984), the United States Supreme Court expressly held that "[w]e conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id*. at 541-42; *Wagshal v. Foster*, 307 U.S. App. D.C. 382, (1994).

Thus, it is clear that this new investigation by the Defendants/Appellees is completely meritless and without any basis in the law. However, based on Defendants/Appellees' pattern and practice and continuing unethical, illegal and unconstitutional conduct, it is a sure bet that they will knowingly pursue this meritless issue to the very end, as they know that doing so will further drain Mr. Klayman's time, energy, and financial resources to zero (0), thereby bankrupting him and in effect, removing him from the practice of law by significantly curtailing and ultimately silencing his conservative/libertarian private and public interest advocacy, not just in the District of Columbia but also in Florida and this circuit, as set forth herein.

## SUMMARY OF THE ARGUMENT

The District Court fundamentally erred by asserting subject matter jurisdiction over this case, when it clearly had none. Then, even assuming

*arguendo* that subject matter jurisdiction was proper, the District Court still fundamentally erred by granting the Defendants/Appellees' Motion to Dismiss.

## STANDARD OF REVIEW

Whether the District Court properly granted Appellees Motion to Dismiss and entered judgment on the pleadings in favor of Appellees is a question of law, which this Court reviews *de novo*. *Douglas v. United States*, 814 F.3d 1268 (11th Cir. 2016).

## ARGUMENT

## I.    THE DISTRICT COURT HAD NO SUBJECT MATTER JURISDICTION OVER THIS CASE, AND EGREGIOUSLY ERRED BY REFUSING TO REMAND

The District Court committed an egregious and reversible error by refusing to remand this case to the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("15th Circuit"), and since it had no subject matter jurisdiction over this case, even its order of dismissal must be nullified and this matter remanded by this Court to the 15th Circuit for further proceedings.

Defendants/Appellees removed this case, without any basis to so, purportedly under 28 U.S.C. § 1332. This bad faith, unethical and illegal conduct was done for the sole purpose of delay, as there is absolutely no possible way for the Court to find that diversity jurisdiction exists. This is because  Mr. Klayman seeks <u>only</u> injunctive relief. *See* ECF No. 1-2 at ¶ 2:

15

**<u>This is an action for injunctive relief only</u>**. Plaintiff is not claiming damages and this complaint is centered on obtaining equitable relief to preliminarily and permanently enjoin Defendants, each and every one of them, from continuing to violate his rights under the Florida Constitution, which violations have severely harmed not just him, but also his colleagues and family as set forth herein. This Complaint asserts no federal claims against Defendants, each and everyone one of them, and is solely based and brought under the Florida Constitution and related Florida common law claims. (emphasis added).

"Where injunctive relief is sought, 'the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective…..In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.'" *Mitchell v. GEICO*, 115 F. Supp. 2d 1322, 1326 (M.D. Ala. 2000); *see also Ericsson GE Mobile Communs. v. Motorola Communs. & Elecs.*, 120 F.3d 216 (11th Cir. 1997). It is the Defendants' burden to "show the court that the value of prospective injunctive relief clearly exceeded the jurisdictional limit." *Mitchell* 115 F. Supp. 2d at 1327. Crucially, "**<u>[w]here the monetary value of the injunctive relief is 'too speculative and immeasurable,' a defendant cannot satisfy its burden of demonstrating to a legal certainty that the amount in controversy is satisfied</u>**." *Id*. 1327-28. (emphasis added).

Here, notwithstanding the cold, hard fact that Mr. Klayman has asked solely for injunctive relief, any "monetary value" of such injunctive relief is completely "speculative and immeasurable." All Mr. Klayman is seeking is an order enjoining

the Defendants from continuing to violate his rights under the Florida Constitution. ECF No. 1-2 at ¶ 2. The monetary value of this could potentially be zero, if the Defendants choose to just finally leave him alone. Otherwise, any "monetary value" from the injunctive relief sought is 100% speculative, and would require a "crystal ball" into the future. This is the textbook definition of "speculative," and therefore the Defendants/Appellees have not, and cannot, satisfy its burden of demonstrating to a legal certainty that the amount in controversy is satisfied.

The District Court's orders in this regard, if allowed to stand, do far more damage than merely cutting off Mr. Klayman's rights. What it has done is opened an avenue for any defendant who does not wish to be in state court to simply fabricate some allegations of potential damages and then be allowed to remove the case to federal court. This completely undercuts the purpose of a state court vs. federal court system and their respective jurisdictions.

There has to be some level of certainty as to the computation of damages before removal is proper, because allegations can always be made, no matter how unsubstantiated or frivolous. Without imposing a level of certainty as to the jurisdictional threshold, defendants are essentially given free rein to choose their forum. This undercuts the direction of this Court that "it is axiomatic that ambiguities are generally construed against removal." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998). There must be a level of deference to the

forum chosen by the Plaintiff in any case. The District Court cannot be allowed to set this disastrous precedent otherwise.

Accordingly, the only correct forum for this action was in the 15th Circuit, and this matter must be remanded to the District Court with further orders to remand this case to then 15th Circuit for further proceedings.

## II.   THE DISTRICT COURT ERRED BY GRANTING THE DEFENDANTS/APPELLEES' MOTION TO DISMISS

As set forth above, the Court need not even reach this issue because it is clear that the District Court lacked subject matter jurisdiction over this case and therefore had no authority to even issue an order on the Defendants/Appellees' Motion to Dismiss. However, even assuming *arguendo* that the District Court had jurisdiction, it still clearly erred by granting the Defendants/Appellees' Motion to Dismiss.

### a.   The District Court Erred By Applying the Rule Against Claim Splitting

"To determine whether a party has improperly split its claims among lawsuits, a court must determine (1) whether the case involves the same parties and their privies, and (2) whether the separate cases arise from the same transaction or series of transactions. *Id*. *Joseph v. Pacesetter Personnell Serv*., 2022 U.S. Dist. LEXIS 108102, at *13 (S.D. Fla. June 16, 2022).

The District Court erred by finding that this instant action duplicative of *Klayman v. Porter et al*, 9:22-cv-80270 (S.D. Fla. Feb. 23, 2022) (the "Damages Action"). The Damages Action is clearly distinguishable because (1) this instant action seeks <u>only</u> injunctive relief, whereas the Damages Action sought damages under 42 U.S.C. § 1983 and (2) this instant action is not based on the same set of facts because it also includes the Defendants' October 28, 2021 letter, Defendant/Appellee Porter, arrogantly gloating in Plaintiff's face, sent Mr. Klayman a new letter informing him of "**another investigation**" and asking him to explain how two lawsuits, *Klayman v. Rao et al*, 21-cv-2473 (D.D.C.) ("*Rao* Case") and *Klayman v. Blackburne-Rigsby, et al*, (21-cv-409) (D.D.C.) ("*Blackburne* Case") did not violate Rule 3.1, which requires that "a lawyer not bring a proceeding or assert an issue without a factual and legal basis." Comp. ¶ 43, Comp. Ex. 6. This was not at issue in the Damages Action, as this was a new example of Defendants/Appellees' continued pattern and practice of unethical, illegal and unconstitutional conduct aimed at removing him from the practice of law by curtailing and ultimately silencing his conservative/libertarian private and public interest advocacy.

### b. Defendants/Appellees Have No Absolute Immunity

The District Court did not reach this issue because it granted the Defendants/Appellees' motion to dismiss solely on the basis of claim splitting, but

it is crucial to also note that the Defendants/Appellees do not have absolute immunity in Florida, which almost certainly explains their desperation to have had this matter transferred to their "home court" in the District of Columbia, where they have given themselves self-conferred "absolute immunity" pursuant to District of Columbia Bar Rule XI § 19(a) to shield themselves from liability for the egregious misconduct. The Preamble of the Bar Rules sets forth that (1) the District of Columbia Bar is created by the District of Columbia Court of Appeals as an "official arm of the Court" and (2) the District of Columbia Court of Appeals promulgated the Bar Rules itself. Thus, the District of Columbia Court of Appeals has granted itself "absolute immunity."

This flies in the face of well-established precedent that it is not a court's duty much less right to create law, but only to interpret it. "To begin with, it is inappropriate to give weight to Congress' unenacted opinion when construing judge-made doctrines, because doing so allows the Court to create law and then effectively codif[y] it based only on Congress' failure to address it. **Our Constitution, however, demands that laws be passed by Congress and signed by the President**. Art. I, §7." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 299 (2014) (emphasis added) (internal citation and quotations omitted). *See also Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166, at *3 (June 27, 1993) ("The Court doubts that it has the power to create law for the District of

Columbia and thereby create jurisdiction for itself under the FTCA."). Thus, This "absolute immunity" was not legislated by Congress or District of Columbia legislators. This is not the function of a court and is wholly improper and in fact unconstitutional/ In any event, this case is in Florida, not the District of Columbia. Thus, District of Columbia law—the D.C. Bar Rules—are not applicable here. Florida law applies.

However, alternatively, even if the District of Columbia Court of Appeals' self-granted "absolute immunity" were proper – again, it is not, as set forth above – it does not apply to the allegations set forth in the Complaint. The Court in *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010), expressly found this grant of immunity only applies to conduct taken "in the course of [Bar officials'] official duties." There is no feasible argument that intentionally violating constitutional rights is in the course of the Defendants' official duties.

Lastly, it is clear that even judicial immunity, much like prosecutorial immunity, does not apply to claims for injunctive relief. Numerous courts have made this finding, including the Lower Court. "…[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *Moten v. Hatch*, 2011 U.S. Dist. LEXIS 97661, at *3 (D.D.C. Aug. 25, 2011). *See also Livingston v. Guice*, 1995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995) ("Equally clear, however, is the principle that judges are not absolutely

21

immune from suits for prospective injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536-543, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984). "Absolute" immunity, therefore, is only absolute insofar as it limits claims for *damages* brought against judges.") *Id*. at 10.

In the landmark case of *Pulliam v. Allen*, 466 U.S. 522 (1984), the United States Supreme Court expressly held that "[w]e conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id*. at 541-42. In *Pulliam*, the Petition, Gladys Pulliam was a magistrate judge. She had a practice of imposing bail on persons arrested for non-jailable offenses and then incarcerating those persons if they could not meet bail. *Id*. at 524. Respondents challenged this practice under 42 U.S.C. § 1983. The District Court found that this was a violation of due process and equal protection and enjoined Pulliam. *Id*. at 526. The Supreme Court affirmed. In doing so, it provided sound landmark legal reasoning that resonates and applies to this day:

> If the Court were to employ principles of judicial immunity to enhance further the limitations already imposed by principles of comity and federalism on the availability of injunctive relief against a state judge, it would foreclose relief in situations where, in the opinion of a federal judge, that relief is constitutionally required and necessary to prevent irreparable harm. Absent some basis for determining that such a result is compelled, either by the principles of judicial immunity, derived from the common law and not explicitly abrogated by Congress, or by Congress' own intent to limit the relief available under § 1983, we are unwilling to impose those limits ourselves on the remedy Congress provided. *Id*. at 539-40.

> We remain steadfast in our conclusion, nevertheless, that Congress intended § 1983 to be an independent protection for federal rights and find nothing to suggest that Congress intended to expand the common-law doctrine of judicial immunity to insulate state judges completely from federal collateral review. *Id.* at 541.

*See also*. *Absolute Judicial Immunity Makes Absolute No Sense: An Argument for an Exception to Judicial Immunity*, 84 Temp. L. Rev. 1071.; *see also Note: Pulliam v. Allen: Harmonizing Judicial Accountability for Civil Rights Abuses with Judicial Immunity* 34 Am. U. L. Rev. 523. Thus, even if D.C. law were to apply, and the Court were to strangely find that intentionally violating Mr. Klayman's constitutional rights were part of Defendants/Appellees official duties, that Mr. Klayman is only seeking injunctive relief would still defeat any claim of judicial immunity.

### c. *Younger* Abstention Does Not Apply

Furthermore, it is abundantly clear that the *Younger* abstention doctrine does not apply. The Supreme Court in *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013) limited the application of the *Younger* abstention doctrine to only three situations: (1) intrusion into ongoing state criminal prosecutions, (2) certain "civil enforcement proceedings" and (3) pending "civil proceedings involving certain orders…uniquely in furtherance of the state court's ability to perform their judicial functions." *Id.* Given the very limited nature of this doctrine, particularly as

applied to the facts of this case, it is clear that courts should not strain to find that it is applicable.

Furthermore, it is indisputable that there exists a "bad-faith" exception to the *Younger* doctrine, which this Court has defined as "where 'the pending state action was brought in bad faith or for the purpose of harassing' the federal plaintiff…." *JMM Corp. v. District of Columbia*, 363 U.S. App. D.C. 160, 170 (2004). Furthermore, other courts have found:

> A showing that a prosecution was brought in retaliation for or to discourage the exercise of constitutional rights "will justify an injunction regardless of whether valid convictions conceivably could be obtained." *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir.1981). The state does not have any legitimate interest in pursuing such a prosecution; "[p]erhaps the most important comity rationale of Younger deference—that of respect for the State's legitimate pursuit of its substantive interests—is therefore inapplicable." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir.1979).

*Lewellen v. Raff*, 843 F.2d 1103, 1109–10 (8th Cir. 1988). "When, however, a state bar acts in bad faith or to retaliate against First Amendment protected activity, the courts should not abstain." *Hensler v. District Four Grievance Committee*, 790 F.2d 390, 391 (5th Cir.1986). "Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights, or, equally, in continuing actions otherwise brought in bad faith, thereby reducing the need for deference to state proceedings." *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994). Here, Defendants/Appellees are

intentionally piling on meritless complaint after meritless complaint in hopes of diverting all of Mr. Klayman's time and financial resources, thereby bankrupting him, and preventing him from representing clients and obtaining new ones. By doing so, Defendants/Appellees hope to, and have, significantly curtailed and seek to totally silence his First Amendment public interest and private advocacy rights. This clearly implicates the exercise of constitutional rights by Mr. Klayman.

### d.  Mr. Klayman Has Pled Valid Causes of Action

*First*, Mr. Klayman has properly pled a cause of action under Fla. Const. § IV, which states, "[e]very person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press." The Complaint details the fact that every single instance of gross, egregious misconduct by the Defendants was done in order to "remov[e] him from the practice of law by significantly curtailing and ultimately silencing his conservative/libertarian private and public interest advocacy, not just in the District of Columbia but also in Florida and this circuit." Comp. ¶ 53. *See also* Comp. ¶ 9, 18, 24, 29, 34, 46. Mr. Klayman's right to be a conservative/libertarian private and public interest advocate is guaranteed to him under Fla. Const. § IV. The Complaint sets forth in detail the Defendants/Appellees' violation of this constitutional provision:

> Defendants know that even if they are unsuccessful in ultimately obtaining formal discipline against Mr. Klayman, they can achieve the

same effect simply by piling on meritless investigation and complaint after meritless investigation and complaint, thereby forcing Mr. Klayman to devote enormous time, energy, and financial resources to defend them. Thus, Defendants' goal of removing Mr. Klayman from the practice of law, and therefore silencing his private and public interest advocacy, will be achieved even if there is no formal discipline against Mr. Klayman. Comp. ¶ 26.

Thus, the bottom line is this—the Defendants/Appellees' goal is not simply to obtain a final disciplinary decision against him, but instead is to wield their power and authority to prevent Mr. Klayman from being advocating conservative/libertarian public interest causes and private actions. This is the textbook definition of trying to "silence" him, violating his rights under Fla. Const. § IV.

*Second*, Mr. Klayman has also properly pled a cause of action under Fla. Const. § IX, which provides "no person shall be deprived of life, liberty, or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself." Mr. Klayman was subject to a completely illegal and unconstitutional "temporary suspension" by the Defendants/Appellees in the Sataki Matter, which ultimately resulted in a twenty (20) month "temporary suspension" as the matter dragged through the D.C. Court of Appeals. This completely violated Mr. Klayman's due process rights, as he has been presumed guilty until proven innocent, which is diametrically opposed to perhaps the number one most fundamental tenet of our

legal system. This tells one a lot about the disciplinary apparatus in the District of Columbia, as partisan swamp by any other name. This modus operandi has no place in this Court or in Florida, whose state bar is professional and not run by leftist partisan vigilantes and their pliant counsel, who consider themselves immune from bar disciplinary proceedings and other legal recourse and thus believe wrongly that they are free to do as they please without consequence.

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's refusal to remand this case to the 15th Circuit, and subsequent order granting the Defendants/Appellees' motion to dismiss were in clear error that must be reversed. This matter must be remanded to the District Court with further orders to remand to the 15th Circuit for further proceedings.

Dated: October 17, 2022                    Respectfully Submitted,


                                           /s/ Melissa Isaak
                                           Melissa Isaak, Esq.
                                           2815-B Zelda Road
                                           Montgomery, AL 36106
                                           Tel: 334-262-8200
                                           Melissa@protectingmen.com

                                           *Counsel for Appellant*

## **CERTIFICATE OF COMPLIANCE**

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 6,328 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 15.28 in 14-point Times New Roman.


Dated: October 17, 2022          /s/ Melissa Isaak_____

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties listed below on October 17, 2022. Pursuant to 11th Cir. Rule 31-3, four (4) true and correct copies were sent via Federal Express on October 17, 2022 to the clerk of the Court.

/s/ Melissa Isaak